United States District Court
Northern District of California

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XYNGULAR CORPORATION,<br><br>    Plaintiff.<br><br>    v.<br><br>MARC SCHENKEL,<br><br>    Defendant. | Case No. 13-mc-80123-EMC (JCS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART XYNGULAR CORPORATION'S MOTION TO COMPEL**<br><br>Re: Dkt. Nos. 1, 16, 18 |

## I.  INTRODUCTION

This Order resolves a discovery dispute regarding compliance with a subpoena duces tecum served in this district in relation to a case pending in the United States District Court for the District of Utah ("Utah District Court"), *Xyngular Corporation v. Marc Schenkel*, No. 2:12-cv-876-TC. District Judge Edward M. Chen referred the case to this Court for discovery purposes. *See* Dkt. No. 6. Before the Court is Xyngular Corporation's ("Xyngular") June 7, 2013 motion to compel non-party Ian Swan ("Swan") to comply with Xyngular's subpoena to produce documents and other information ("Motion"). *See* Dkt. No. 1. The parties have also filed two letters with this Court regarding the dispute: (1) Xyngular's September 27, 2013 unilateral discovery letter brief responding to Swan's objections to Xyngular's subpoena, Dkt. No. 16 ("Unilateral Letter"); and (2) the parties' October 11, 2013 joint letter stating the unresolved issues, Dkt. No. 18 ("Joint Letter"). Pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument. For the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART the Motion.

## II.  BACKGROUND

### A.  Underlying Case

On September 13, 2012, Xyngular filed a lawsuit alleging nine causes of action against Defendant Marc Schenkel ("Schenkel"), a Xyngular shareholder, in Utah District Court. *See* Mot.

1  to Compel at 3. On October 22, 2012, Schenkel filed an answer, counterclaim, and third-party
2  complaint. *See id.* On January 2, 2013, Schenkel filed a motion seeking a temporary restraining
3  order ("TRO"). *See id.*

4  In support of his TRO motion, Schenkel filed declarations, one of which was by non-party
5  Swan. *See id.* Swan stated in his declaration that he is a Xyngular shareholder and former
6  information technology manager of Symmetry Corporation ("Symmetry"), a company that is
7  related to Xyngular. *See* Joint Letter, Ex. A ¶ 2 (Decl. of Ian Swan in Supp. of Mot. for TRO)
8  ("Swan Decl."). Swan attached several documents to his declaration ("Disclosed Documents") and
9  stated that the documents were "true and correct copies of Xyngular's corporate records." *See id.*
10 ¶ 6. Swan further stated that these documents "resided on Global Ventures [Management Services,
11 LLC ("GVMS")] servers and are not password protected or secured in any way," and that they
12 "are available to anyone." *Id.* Swan did not expressly state that he removed the documents or that
13 the showed them to Schenkel.

14 Swan also stated in his declaration that during the course of his work for Symmetry, he
15 became concerned about the potential illegality of Xyngular's activities, and that "Mr. Schenkel
16 was made aware of the illegal conduct during a conversation [they] had. Mr. Schenkel contacted
17 the [Federal Bureau of Investigation ("FBI")] who contacted [Swan]." Swan Decl. ¶ 35.
18 Specifically, Swan "informed Mr. Schenkel and the [FBI] that he believed that Symmetry was
19 involved in a tax avoidance scheme. Symmetry was collecting state sales tax from customers and
20 not remitting the taxes to the respective state franchise tax boards." *Id.* ¶ 36. Swan "also informed
21 Mr. Schenkel and the [FBI] that that [sic] Symmetry had paid employees in cash and through
22 offshore bank accounts." *Id.* ¶ 37.

23 On January 23, 2013, Swan's declaration was admitted as testimony at the evidentiary
24 hearing for the TRO proceedings before the Utah District Court. *See* Decl. of Mark James in Supp.
25 of Mot. to Compel ("James Decl."), Ex. A at 99:20–22; Joint Letter, Ex. C at 102:8–24 (together,
26 "Evidentiary Hr'g Tr."). While Swan was being cross-examined, the Utah District Court stopped
27 the proceedings to advise Swan of his Fifth Amendment rights and gave him leave to consult with
28 counsel. *See* Mot. to Compel at 4; Evidentiary Hr'g Tr. at 100:12–13; 109:14–111:23. Swan at

first denied the court's invitation to step down from the witness stand, but he eventually left the courtroom without further substantive testimony and did not return to the hearing. *See* Mot. to Compel at 4.

### B. Subpoena

On February 4, 2013, Xyngular filed a notice with the Utah District Court, indicating that it would serve a subpoena upon Swan. James Decl. ¶ 5, Ex. B. Service of the subpoena was accomplished on February 12, 2013. *See id.* Ex. C; Unilateral Letter, Ex. A ("Subopena"). The Subpoena seeks twenty-three categories of documents and materials. *See* Subpoena at 7–10. Several categories seek all documents that Swan "removed from the GVMS servers" or from Xyngular, related companies (together, "Companies"), or its employees. *See id.*, Categories 1, 3, 4, 12 and 18. Several categories seek Swan's correspondence with and documents "received from or provided to" Schenkel or Schenkel's counsel. *See id.*, Categories 2, 5–9. Two categories seek Swan's correspondence with and documents "received from and provided to" the FBI. *See id.*, Categories 10–11. Other categories seek contracts, other agreements, correspondence, and copies of software relating to work that Swan performed for the Companies. *See id.*, Categories 13–17, 20, 21, 23. One category seeks "correspondence and documents referring to or relating to the 'acts of misconduct' that are discussed in paragraph 34 of [the Swan Declaration]." *See id.*, Category 19. One category seeks Swan's tax records from 2010 to present. *See id.*, Category 22.

On July 12, 2013, Swan responded with numerous procedural objections, such as failure to provide compensation for time spent complying with the subpoena, vagueness of definitions, and overbroadness of date ranges for which documents were sought. *See* Unilateral Letter, Ex. B. Swan also objected generally to all requests on the basis of his Fifth Amendment right against self-incrimination. *Id.* at 8. Sometime thereafter, Xyngular responded to these objections. *See* Unilateral Letter at 2. On September 27, 2013, Xyngular reiterated these responses in a letter filed with this Court. *See id.*

Since then, Xyngular has modified the date range for the Subpoena's requests, narrowed the definition of "Companies" to Xyngular, Symmetry, and GVMS, dropped Categories 20 and 22, and narrowed Category 21 to documents related to services that Swan provided to Schenkel or

Schenkel's counsel. *See* Unilateral Letter at 1 n.1, 6, 8. Swan has dropped his procedural objections, but the Fifth Amendment objection remains in dispute. *See* Joint Letter at 6. Additionally, Swan retained a new attorney shortly before the filing of the Joint Letter. *See id.* at 5–6. By way of his new counsel, Swan asserts for the first time in the Joint Letter an objection based on his First Amendment right to privacy. *Id.* at 9–10.

The parties dispute whether Swan has actually testified that he removed the Disclosed Documents or other documents from the GVMS servers and gave the same to Schenkel. Xyngular insists that Swan testified to removing—and did remove—documents from the GVMS servers then gave them to Schenkel, and that this may have been illegal. *See, e.g.*, *id.* at 4 ("Mr. Swan testified that he had obtained documents from the Xyngular parties and showed those documents to Mr. Schenkel."). Xyngular also notes that Schenkel has testified that Swan gave him the documents. *See, e.g.*, *id.* at 3 ("Mr. Swan voluntarily provided documents to Mr. Schenkel, on his own initiative.") (citing Utah District Court pleadings). However, Swan counters that nothing in his own declaration or other testimony suggests that he illegally removed the Disclosed Documents or any other documents, merely that "he might have seen these records and believed them to be true and authentic." Joint Letter at 8.

### III. ANALYSIS

Under Rule 45 of the Federal Rules of Civil Procedure, any party may serve a subpoena that commands a non-party to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). A court may hold in contempt a person who fails without adequate excuse to comply with a subpoena. Fed. R. Civ. P. 45(e). As an alternative to compliance, the served party may file a written objection within fourteen days of the issuance of the subpoena. Fed. R. Civ. P. 45(c)(2)(B). At any time thereafter, the serving party may file a motion with the court to compel production. Fed. R. Civ. P. 45(c)(2)(B)(i). Any production "may be required only as directed in the order" and must protect the non-party from significant expense resulting from compliance. Fed. R. Civ. P. 45(c)(2)(B)(ii).

///

### A. Relevance

Subpoenas are subject to the relevance requirements of Rule 26(b). *See, e.g.*, *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, CV 12-01971-CW (KAW), 2013 WL 5442269 (N.D. Cal. Sept. 30, 2013). Evidence is relevant if it tends to make 'more or less probable' a fact 'of consequence to the determination of the action.'" Fed. R. Evid. 401.

Xyngular argues that the information sought by the Subpoena is relevant to "the issue of whether Schenkel has engaged in wrongful conduct in relation to" the underlying case and because Swan has been identified as a potential third-party witness in the underlying case. *See* Mot. to Compel at 6. Specifically, Xyngular argues that the information it seeks is relevant to understanding "what information Swan removed from the GVMS servers, why he removed the documents, what information he provided to Schenkel, and what involvement Schenkel had in the removal of the documents." *See id.* Swan has not made any argument to the contrary on the issue of relevance. *See* Unilateral Letter, Ex. B; Joint Letter at 5–10. The pleadings of the underlying case have not been submitted to this Court.

The Court finds that the information sought by Xyngular is relevant to the underlying case. The Court also notes that because its "only connection with [the underlying] case is supervision of discovery ancillary to an action in another district," it is "hesitant to pass judgment on what constitutes relevant evidence thereunder." *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D. Cal. 2006) (quoting *Truswal Syst. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211–12 (Fed. Cir. 1987)).

### B. Timeliness

Plaintiffs served the Subpoena on February 12, 2013. *See* James Decl. Ex. C. Swan failed to comply or object within the required fourteen days. *See id.* ¶ 7. In fact, it appears that he did not present any objections until July 9, 2013. *See* Unilateral Letter, Ex. B. Accordingly, Swan violated Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure. Generally, such a violation results in a waiver of any objections. *See* Rule 45(c)(2)(B). However, "where a constitutional privilege is involved a trial court possesses the discretion not to find waiver." *See In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) (citations omitted) (trial court properly exercised its discretion in

finding no waiver of Fifth Amendment rights despite failure to timely file objections under Rule 45). "This is particularly true . . . when the alleged waiver is accomplished by inaction rather than action." *Id.* Here, because important constitutional rights are at issue and because the alleged waiver was accomplished by a failure to timely object rather than an express statement, the Court exercises its discretion to find no waiver of Swan's Fifth and First Amendment rights as a result of the failure to object to the Subpoena. However, the Court holds that Swan has waived all objections to the Subpoena that are not based in constitutional rights. *See also* Joint Letter at 6 (Swan indicated that he is dropping procedural objections).

### C. Fifth Amendment

#### 1. Background law

##### a. Privilege against self-incrimination

One grounds for objection to a subpoena is the Fifth Amendment, which provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The Fifth Amendment "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972) (citations omitted).

The central inquiry is "whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53 (1968). "[I]n the civil context, the invocation of the privilege is limited to those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner." *Nursing Home Pension Fund v. Oracle Corp.*, C01-00988 MJJ, 2007 WL 1880381, at *11 (N.D. Cal. June 29, 2007) (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000)) (internal quotations omitted). "[T]he privilege against self-incrimination does not depend upon the likelihood, but upon the possibility of prosecution . . . ." *Id.*

If the Court determines that the privilege exists, then it must determine the appropriate

6

scope of the privilege. *See id.* at *14. "The privilege afforded not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant . . . . Indeed, it is enough if the responses would merely 'provide a lead or clue' to evidence having a tendency to incriminate." *Santa Clara Valley Hous. Grp., Inc. v. United States*, C08-05097 HRL, 2010 WL 5148371, at *1 (N.D. Cal. Dec. 14, 2010) (quoting *Hoffman v. United States,* 341 U.S. 479, 486 (1951); *Doe*, 232 F.3d at 1263; *United States v. Neff,* 615 F.2d 1235, 1239 (9th Cir.1980)) (quotations omitted).

      Although a person is generally not excused from producing documents simply because such documents contain incriminating information, the Supreme Court has recognized that "the act of production itself may implicitly communicate statements of fact. By producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic." *United States v. Hubbell*, 530 U.S. 27, 36 (2000) (internal quotations omitted). However, the Court has also explained that where the party serving the subpoena already knows of the "existence of," "access to," and "location" of certain documents, the witness' possession of those documents is a "foregone conclusion," and the privilege does not apply. *Id.* (citing *Fisher v. United States*, 425 U.S. 391, 411 (1976)).

      **b.**    **Testimonial waiver**

      The Fifth Amendment is waived unless invoked. *United States v. Murdock*, 284 U.S. 141, 148 (1931). A "testimonial waiver" may be inferred from conduct or statements, but such a waiver "is not to be lightly inferred, and the courts accordingly indulge every reasonable presumption against finding a testimonial waiver." *Nursing Home Pension Fund*, 2007 WL 1880381, at *11 (quoting *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981)) (citations omitted).

      In considering the scope of a waiver, it is axiomatic that "disclosure of a fact waives the privilege as to details." *See Rogers v. United States*, 340 U.S. 367, 373 (1951). At the same time, "[a] non-party witness may pick the point beyond which he will not go, and refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, as long as the answers sought may tend to further incriminate him." *Nursing Home Pension Fund*, 2007 WL 1880381, at *12 (quoting *United States v. Seifert*, 648 F.2d 557, 561 (9th Cir. 1980))

(internal quotations omitted). Accordingly, the Supreme Court has held that a court must determine on a question-by-question basis "whether the answer to [a] particular question would subject the witness to a 'real danger' of further crimination." *Rogers*, 340 U.S. at 374 (citing *Heike v. United States*, 227 U.S. 131, 144 (1913)). The Ninth Circuit has explained that "the touchstone in *Rogers* is the adjective 'further,' and thus an admission of a criminating fact may waive the privilege as to the details of that fact so long as they do not further incriminate, but where those details would so incriminate, the privilege is not waived." *In re Seper*, 705 F.2d 1499, 1501 (9th Cir. 1983).

### 2. Discussion

Swan has asserted the Fifth Amendment as a basis for his objections to the subpoena. *See* Unilateral Letter, Ex. B at 8; Joint Letter at 6–9. Xyngular argues that no Fifth Amendment privilege exists because Swan does not face any real danger of incrimination, and any privilege that might exist has been waived based on Swan's participation in the TRO proceedings in the Utah District Court. *See* Unilateral Letter at 3; Joint Letter at 4–5. For the reasons explained below, the Court finds that Swan does have a Fifth Amendment privilege but that it has been partially waived by his participation in the TRO proceedings.

#### a. Swan's privilege

To determine whether Swan has a Fifth Amendment right, the Court must evaluate whether Swan "is confronted by substantial and 'real,' and not merely trifling or imaginary hazards of incrimination." *See Marchetti*, 390 U.S. at 53. The Court finds that Swan does face a real danger of incrimination because the fact of Swan's possession of Xyngular's corporate records could provide "a lead or a clue" that he removed such records from the GVMS servers in excess of his authorized access, and unauthorized access to computers is an element of certain crimes. *See Santa Clara Valley Hous. Grp.*, 2010 WL 5148371, at *1; Joint Letter at 7 (citing 18 U.S.C. §§ 1832 (trade secrets), 1831 (economic espionage), 1030 (fraud involving computers)). Indeed, Xyngular agrees that the "incriminating fact" for Swan is "whether or not he removed documents and records from the GVMS servers." *See* Joint Letter at 5. Because the act of production would cause Swan to effectively "admit that the papers existed, were in his possession

8

or control, and were authentic," any such disclosures would normally be privileged because of Swan's Fifth Amendment rights. *See Hubbell*, 530 U.S. at 36.

However, the scope of Swan's privilege is limited in this case because he has submitted a declaration in the Utah District Court that provides and authenticates the Disclosed Documents. *See* Swan Decl. ¶¶ 6–34. This submission and authentication is sufficient to indicate his possession and control of the same. *See Hubbell*, 530 U.S. at 36. As such, Xyngular already knows of the existence, location, and fact of Swan's access to the Disclosed Documents, making Swan's possession of them a "foregone conclusion." *See id.* (citing *Fisher*, 425 U.S. at 411). The Disclosed Documents are thus outside the scope of Swan's privilege. *See Rogers*, 340 U.S. at 374.

### b. Swan's waiver

Swan's testimony before the Utah District Court has similarly limited his privilege based on the separate legal principle of waiver. First, Swan submitted a declaration in the Utah District Court that provides and authenticates the Disclosed Documents. *See* Swan Decl. ¶¶ 6–34. As explained above, this is sufficient to indicate his possession and control of the same. *See Hubbell*, 530 U.S. at 36. In his declaration, he noted the location of corporate records, asserted that they were "available to anyone" then, in the same paragraph, explained that certain corporate records were attached and authentic. *See* Swan Decl. ¶ 6. Swan also stated that he was concerned about the legality of Xyngular's activities, which suggests a motivation for removing corporate records from the GVMS servers, and for sharing the Disclosed Documents with Schenkel. *See id.* ¶¶ 34–37. Second, he testified voluntarily about the Disclosed Documents at the evidentiary hearing. *See* Evidentiary Hr'g Tr.

Taken as a whole, Swan's declaration and testimony before the Utah District Court constitute "incriminating" statements sufficient to constitute waiver as to the Disclosed Documents, despite the fact that Swan has not expressly admitted that he removed any documents. *See Hashagen v. United States*, 283 F.2d 345, 352 (9th Cir. 1960) ("incriminating fact" is not "the equivalent of a complete admission of guilt or . . . disclosure of elements constituting the whole crime"). Accordingly, Swan must produce the Disclosed Documents that are sought by Xyngular's Subpoena. *See Rogers*, 340 U.S. at 374.

However, the scope of Swan's waiver is limited—Swan does not have to produce any materials that would provide support for a claim that he removed documents other than the Disclosed Documents, or that he engaged in other criminal misconduct, because he has not testified as to such facts.

The Ninth Circuit's reasoning in *Seper* is instructive for understanding the limited scope of Swan's waiver. In *Seper*, a third-party witness had expressly testified that he had written a news story using information obtained from government employees. *See Seper*, 705 F.2d at 1500. This testimony gave rise to the inference that the witness had committed a federal crime prohibiting the publication of unauthorized disclosures from government employees. *Id.* at 1501 (citing 26 U.S.C. § 7213(a)(3)). The disputed discovery request sought the names of the government employees from the witness. *Id.* The court refused to compel the witness to provide the names, reasoning that the witness' existing testimony that he had used information from employees could "certainly . . . provide a basis to charge" him of a federal crime but it was, alone, insufficient to convict him. *Id.* The court explained that "[p]roof that the disclosure was unauthorized obviously would be more difficult if his sources remain undisclosed." *Id.* Additionally, providing the names could help to prove that the witness knew such disclosures were unauthorized, and such knowledge was an element of the crime. *Id.* Because "[n]othing in [the witness'] previous testimony" supplied the essential elements, the court refused to compel the names of the employees. *Id.*

Here, Xyngular argues that Swan has already disclosed enough to incriminate himself and that disclosing additional documents and related information could not further incriminate him. *See* Joint Letter at 4–5. Indeed, Swan has disclosed information that could be used to build a case against him. That is, his attachment and authentication of the Disclosed Documents to the declaration already reveals the fact of his possession of such documents, which gives rise to an inference that he removed the documents from the GVMS servers. However, this testimony alone may not be sufficient evidence to convict Swan of a crime involving improper removal of documents. Additionally, if Swan produces documents in response to Xyngular's request for documents that Swan "removed from the GVMS servers," the act of production in response to such a request would provide additional evidence of his potential wrongdoing. *See, e.g.*, Unilateral

10

Letter, Ex. A at 7. As in *Seper*, proof that Swan removed documents or that he knew that the removal of the documents exceeded his authority "obviously would be more difficult" if prosecutors did not have, for example, correspondence describing and transmitting the documents. Nothing in Swan's previous testimony establishes that he removed any documents or that he knew such removal was improper.

Xyngular argues that the waiver is broader than the Disclosed Documents, asserting that Swan has already "testified that he had obtained documents from the Xyngular parties and showed those documents to Mr. Schenkel." *See* Joint Letter at 4. However, Xyngular provides no citation to the record for this specific testimony, nor can the Court find any. What appears to be Xyngular's primary evidence on this issue is unconvincing—it points to the paragraph in Swan's declaration that states:

> Xyngular and Symmetry corporate records created by Steve Kole resided on [GVMS] servers and are not password protected or secured in any way. These documents are available to anyone. The following documents are true and correct copies of Xyngular corporate records.

*See id.* at 8 (citing Swan Decl. ¶ 6). Swan responds:

> Nothing in this paragraph suggests that Mr. Swan had illegally taken Xyngular's corporate records and gave them to Mr. Schenkel or other people. He simply confirmed that these 28 exhibits are true copies of Xyngular's corporate records. It simply shows that he might have seen these records and believed them to be true and correct copies. Nothing more than that can and should be inferred from state [sic] statement.

*Id.* at 8–9. Xyngular counters that if the documents attached to Swan's declaration and submitted to the Utah District Court did not come from Swan, "then there would be no reason for him to have voluntarily filed his Declaration in which he describes and authenticates . . . [the] 'corporate documents' or voluntarily appear before the Utah [District] Court." *Id.* at 9.

Neither Xyngular nor Swan are completely correct. As discussed above, the fact of Swan's attachment and authentication of the Disclosed Documents is sufficient to indicate that he possesses such documents and, thus, support an incriminating inference that he removed the same from the GVMS servers. However, while Swan's testimony is enough to be incriminating as to the Disclosed Documents, it is not enough to be incriminating as to other documents. Swan has not already so incriminated himself that disclosures regarding other corporate records "would be

11

1  'mere details' that could not further incriminate [him]." *See Conant v. McCoffey*, C 97-0139 FMS,
2  1998 WL 164946 (N.D. Cal. Mar. 16, 1998) (citing *Seper*, 705 F.2d at 1501). In light of the
3  principle that waiver may not be found lightly, the Court does not treat Swan's testimony as a
4  complete waiver of Swan's right as to any other documents that he might possess. *See Nursing*
5  *Home Pension Fund*, 2007 WL 1880381, at *12.

Accordingly, as to Categories 1–5, 7 and 9, Swan must produce the Disclosed Documents only. As to Categories 6, 8, 10, 12, and 13–19, Swan must produce the Disclosed Documents and all requested materials except for those he removed from—or related to those that he removed from—Xyngular, Symmetry, GVMS, Nouvara, Upper Case Living, POGA, or Acelaoe. As to Categories 10 and 11, Swan must produce all requested materials, even those beyond the Disclosed Documents, because his communications with the FBI have completely waived his privilege as to those communications. As to Categories 20 and 22, Xyngular has dropped these requests. *See* Joint Letter at 1 n.1. As to Category 21, Swan does not have to comply for the privacy reasons explained below. As to Category 23, Swan must produce the requested materials.

### D. Right to Privacy

The First Amendment of the United States Constitution guarantees a right to privacy. *Bickley v. Schneider Nat., Inc.*, C 08-5806 JSW JL, 2011 WL 1344195 (N.D. Cal. Apr. 8, 2011) (citing *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965)). Additionally, "the California Constitution provides that all people have certain inalienable rights, and among these are 'pursuing and obtaining safety, happiness, and privacy.'" *Lantz v. Superior Court*, 28 Cal. App. 4th 1839, 1853 (1994) (citing CAL. CONST., art. 1, § 1). "Federal courts expressly recognize a constitutionally-based right of privacy that can be raised in response to discovery." *Id.* (citing *Breed v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 542 F.2d 1114, 1116 (9th Cir. 1976).

"When the constitutional right of privacy is involved, 'the party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are carefully balanced.'" *Willner v. Manpower, Inc.*, C 11-2846 JSW MEJ, 2012 WL 4902994 (N.D. Cal. Oct. 16, 2012) (quoting *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011); *Wiegele v. Fedex Ground Package*

1  *Sys.*, 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007). "Compelled discovery within the realm of
2  the right of privacy 'cannot be justified solely on the ground that it may lead to relevant
3  information." *Id.* (citations and quotations omitted). The Court must conduct "a 'careful
4  balancing' of the 'compelling public need' for discovery against the 'fundamental right of
5  privacy." *Id.* (citing *Lantz*, 28 Cal. App. 4th at 1854) (citation omitted).

6      Xyngular seeks information that includes private financial information in the form of tax
7  returns, W-2s, invoices, records of hours worked, and documents relating to his consulting
8  services and compensation. *See* Joint Letter at 9 (citing Subpoena, Categories 1, 6, 7, 20–22).

9      As to Categories 1 and 7, the Court orders the production of only the Disclosed
10 Documents, as discussed above; the Court notes here that there are no privacy rights with regard to
11 the Disclosed Documents, which Swan has already submitted to the Utah District Court. As to
12 Category 6, the Court orders the production of only those materials that Swan did not remove from
13 Xyngular and other companies and that are not related to materials that he removed, as discussed
14 above; the Court notes here that the privacy objections are not sufficiently articulated as to the
15 materials ordered to be produced. As to Categories 20 and 22, Xyngular has voluntarily dropped
16 its requests, as discussed above. *See* Joint Letter at 1 n.1. As to Category 21, the Court finds that
17 Xyngular has not sufficiently demonstrated a compelling need for information that outweighs
18 Swan's fundamental right of privacy, regardless of Xyngular's concession that narrows the scope
19 of the request. *See* Unilateral Letter at 8. Xyngular's explanation of relevance as to the requests
20 generally is not sufficient to justify these requests specifically. *See* Mot. to Compel at 5–6; Joint
21 Letter at 2. Thus, Swan does not have to produce the materials requested in Category 21.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## IV. CONCLUSION

For the foregoing reasons, the Court orders the following: (1) as to Categories 1–5, 7 and 9, Swan must produce physical or electronic copies of the Disclosed Documents; (2) as to Categories 6, 8 and 12–19, Swan must produce all requested materials except for those he removed from—or related to those he removed from—Xyngular or other companies listed above; (3) as to Categories 10, 11 and 23, Swan must produce all requested materials.

IT IS SO ORDERED.

Dated: November 5, 2013

_____
JOSEPH C. SPERO
United States Magistrate Judge

14